UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN KEITH DUNAVAN,

       Plaintiff,                    Civil Action No. 16-10455
                                      Honorable Nancy G. Edmunds
       v.                     Magistrate Judge Elizabeth A. Stafford

NANCY A. BERRYHILL[1],
Acting Commissioner of
Social Security,

       Defendant.
_____/

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF. NO. 10, 15]**

      Plaintiff Brian Keith Dunavan appeals a final decision of defendant

Commissioner of Social Security denying his applications for disability

insurance benefits (DIB) and Supplemental Security Income Benefits (SSI)

under the Social Security Act.  Both parties have filed summary judgment

motions, referred to this Court for a report and recommendation pursuant to

28 U.S.C. § 636(b)(1)(B).  After review of the record, the Court

**RECOMMENDS** that:

- Dunavan's motion [ECF No. 10] be **GRANTED**;

- the Commissioner's motion [ECF No. 15] be **DENIED**; and

_____

[1] This substitution is made pursuant to Federal Rule of Civil Procedure
25(d).

- this matter be **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I.   BACKGROUND

### A.   Dunavan's Background and Claimed Disabilities

Born November 25, 1970, Dunavan was 43 years old when he submitted his applications for disability benefits on May 31, 2013. [ECF No. 6-3, Tr. 48]. He has a GED and past relevant work as a welder, fabricator and plant line supervisor. [ECF No. 6-2, Tr. 37; ECF No. 6-6, Tr. 164]. Dunavan alleged that he is disabled due to neck problems, back problems upper and lower, left arm problems, shoulder problems, migraines, cervical radiculopathy and fibromyalgia, with an onset date of March 24, 2013. [ECF No. 6-3, Tr. 48]. His date late insured was December 31, 2016. [ECF No. 6-6, Tr. 159].

After a hearing on January 26, 2015, which included the testimony of Dunavan and a vocational expert (VE), the ALJ found that Dunavan was not disabled. [ECF No. 6-2, Tr. 16-28]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, Tr. 1-3]. Dunavan timely filed for judicial review. [ECF No. 1].

### B.    The ALJ's Application of the Disability Framework Analysis

DIB and SSI are available for those who have a "disability."  *See*

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  A "disability" is the

"inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months."  42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by

analyzing five sequential steps.  First, if the applicant is "doing substantial

gainful activity," he or she will be found not disabled.  20 C.F.R. §§

404.1520(a)(4), 416.920(a)(4).[2]  Second, if the claimant has not had a

severe impairment or a combination of such impairments[3] for a continuous

period of at least 12 months, no disability will be found.  *Id.*  Third, if the

claimant's severe impairments meet or equal the criteria of an impairment

set forth in the Commissioner's Listing of Impairments, the claimant will be

found disabled.  *Id.*  If the fourth step is reached, the Commissioner

considers its assessment of the claimant's residual functional capacity, and

---

[2] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI
respectively, list the same five-step analysis.

[3] A severe impairment is one that "significantly limits [the claimant's]
physical or mental ability to do basic work activities."  § 1520(c); § 920(c).

3

will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Dunavan was not disabled. At step one, he found that Dunavan had not engaged in substantial gainful activity since his alleged onset date. [ECF No. 10-2, Tr. 18]. At step two, he found that Dunavan had the severe impairments of degenerative disc disease, carpal tunnel syndrome, migraines and obesity. [*Id.*]. At step three, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 19-20].

Between the third and fourth steps, the ALJ found that Dunavan had the RFC to perform light work except that he is limited to "frequent overhead reaching with his right upper extremity, and to occasional handling and feeling with his left upper extremity" and an avoidance of

4

"concentrated exposure to vibration and hazards."[4]   [*Id.*, Tr. 20].  At step

four, the ALJ found that Dunavan could not perform any past relevant work.

[*Id.*, Tr. 26].  With the assistance of VE testimony, [*Id.*, Tr. 45-47], the ALJ

determined at step five that, based on Dunavan's age, education, work

experience and RFC, he could perform work as administrative support

clerk, information clerk, and transportation attendant, and that those jobs

existed in significant numbers in the economy, rendering a finding that he

was not disabled.  [*Id.*, Tr. 27].

## II.   STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining

whether the Commissioner's decision is supported by substantial evidence

and was made in conformity with proper legal standards.  *Gentry v. Comm'r*

*of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is

"more than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. §§ 404.1567(b) and 416.967(b).

(6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009).  An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless.  *Id.* at 655-56.  On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless.  *Id.*; *Gentry*, 741 F.3d at 723, 729; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011).

## III.   ANALYSIS

Dunavan argues that the ALJ's determination that he could perform a limited range of light work is not supported by substantial evidence, and that the ALJ erred in failing to give controlling weight to the opinion of treating physician, Ronald Coriasso, D.O.  These arguments are intertwined in that, if the ALJ did not provide good reasons for giving little weight to Dr. Coriasso's opinion, the assessed RFC is unsustainable.  After

considering these issues, the Court recommends that this matter be remanded for further consideration.

**A.**

Dr. Coriasso's opinion was given by deposition on January 21, 2015. [ECF No. 6-8, Tr. 812-20].  He testified to being board certified by the American of Family Medicine.  [*Id.*, Tr. 812].  Dr. Coriasso began treating Dunavan before his work-related injury in 2012.[5]  [*Id.*, Tr. 813].  Dunavan's attorney described his MRIs in January, April and July 2012, and May and July of 2013, and Dr. Coriasso agreed that they established "severe degenerative disc disease in both the thoracic and cervical spine."  [*Id.*, Tr. 813-14].[6]  He concurred that the MRIs revealed moderate to severe narrowing bilaterally of the neural foramina at multiple levels of the cervical spine.  [*Id.*, Tr. 814].  The April 2012 MRI revealed degenerative disc and joint disease greatest at T8-9, moderate sized left paracentral disc protrusion with annular tearing and narrowing at the left neural foramen. [*Id.*].  Dunavan also received an MRI of his left shoulder in March 2014, which revealed degenerative changes of the AC joint with hypertrophic changes, impingement on the supraspinatus tendon, and tendinosis of the

---

[5] In April 2012, Dunavan was pulling a sawhorse at work and felt a sharp pain in his neck, shoulder and arm. [ECF No. 6-7, Tr. 614].
[6] See MRIs results at ECF No. 6-7, Tr. 242, 244, 466,

supraspinatus tendon.  [*Id.*, Tr. 814-15].  Dr. Coriasso testified that

Dunavan had the "classic signs and symptoms" of bilateral impingement

syndrome in both shoulders, and he treated Dunavan with injections in the

shoulder.  [*Id.*, Tr. 815, 817].  Dunavan also had cervical radiculopathy that

caused pain to radiate down Dunavan's right arm into his hand, and Dr.

Coriasso had referred Dunavan to two different pain management

specialists.  [*Id.*, Tr. 817-18].

Dr. Coriasso also treated Dunavan for abdominal pain that had been

studied with upper endoscopy and lower endoscopies and a CAT scan; he

was diagnosed with clostridium difficile colitis, diverticulitis of the colon,

chronic gastritis and chronic ulcers.  [*Id.*, Tr. 815].  Finally, Dr. Coriasso

testified that he treated Dunavan for depression, anxiety and migraine

headaches.  [*Id.*, Tr. 816].

Dr. Coriasso agreed with Dunavan's claims regarding his limitations

of activities of daily living (ADLs), stating, "[F]rom my observations when

I've examined him, he definitely has some limitations due to his disability."[7]

[*Id.*, Tr. 818].  Dr. Coriasso believed the MRIs and testing support

Dunavan's complaints of severe, chronic pain and the resulting limitations.

---

[7] Dunavan's attorney read to Dr. Coriasso, prior the start of the deposition,
the list of ADLs that he claims to be capable. [ECF No. 6-8, Tr. 818].  So
the specific limitations that Dr. Coriasso agreed to is unclear.

[*Id.*].  After being told that sedentary work requires a sit/stand option, the ability to lift up to ten pounds, a low stress work environment and the ability to work eight hours a day for five days a week, Dr. Coriasso opined that Dunavan did not have the capacity to perform such work.  [*Id.*, Tr. 818-19]. He agreed that Dunavan "would be unpredictable in his ability to maintain employment in that he might miss more than 15 minutes in a morning shift and/or 15 minutes in an afternoon shift and/or 30 minutes for a scheduled break," and that he would "miss more than 20 percent of a workday, workweek, or work month as a result of pain, the severe side effects of this medication, the need to visit doctors and hospitals, the need to rest and lie down."  [*Id.*, Tr. 819].

Dr. Coriasso testified that Dunavan was taking hydrocodone every four hours, Bentyl (an antispasmodic for irritable bowel syndrome and chronic constipation), Omeprazole (for peptic ulcer disease), Lyrica every 12 hours (for pain), and Lexapro and Depakote (antidepressants).  [*Id.*, Tr. 819-20].  Dunavan had been told to discontinue taking Excedrin Migraine due to his peptic ulcer disease.  [*Id.*, Tr. 820].  Dr. Coriasso opined that Dunavan's medication produced work-preclusive tiredness, drowsiness, dizziness and nausea.  [*Id.*, Tr. 820].  In addition, the narcotics analgesics that Dunavan took caused him severe constipation and, upon running out

9

of the medication, resulted in withdrawal symptoms and increased pain, and caused him to seek emergency room treatment.  [*Id.*, Tr. 816-17].

The ALJ accorded little weight to Dr. Coriasso's opinion that Dunavan could not work at even a limited range of sedentary work, reasoning that the opinion was "inconsistent with the evidence of record including findings on diagnostic testing that confirmed only moderate degenerative changes in the cervical spine (Exhibit 2F) and mild degenerative changes in the claimant's shoulder (Exhibit 10F); there is no indication the claimant requires surgery."  [ECF No. 6-2, Tr. 26].  This reasoning is insufficient for several reasons, as described below.

## B.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence.  *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43.  "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant

10

factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723. In all cases, a treating physician's opinion is entitled to great deference. *Id.* An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). This procedural safeguard not only permits "meaningful appellate review," but also ensures that claimants "understand the disposition of their cases." *Rogers*, 486 F.2d at 242-43 (internal quotation marks and citation omitted). Courts will not hesitate to remand when the ALJ failed to articulate "good reasons" for not fully crediting the treating physician's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004).

The Commissioner argues as a preliminary matter that Dr. Coraisso's opinion that Dunavan is incapable of performing sedentary work equates to an opinion that he is disabled, which is an issue reserved for the Commissioner. [ECF No. 15, PageID 943-44]. The Commissioner cites in support *Similton v. Comm'r of Soc. Sec.*, No. 14-12648, 2015 WL 4756537, at *5 (E.D. Mich. Aug. 12, 2015), but the language upon which the

11

Commissioner relies from *Similton* did not involve a treating physician's opinion; the record did "not include any limitations imposed by her physician," and the plaintiff provided "no insight regarding what additional functional limitations she believe[d] the ALJ should have included in her RFC." *Id.* at *5.[8]  In contrast, Dr. Coraisso's opinion provided insight into Dunavan's RFC; he opined that Dunavan did not have the functional capacity to work in a position that would provide him with a sit/stand option and low stress environment, and would require him to lift up to ten pounds and to work a full workweek.  [ECF No. 6-8, Tr. 818-19].  And even if parts of Dr. Coraisso's opinion pertained to issues reserved to the Commissioner, the ALJ was still required to carefully consider the doctor's opinion.  Social Security Ruling 96–5p, 1996 WL 374183, at *2 (July 2, 1996), ("[A]djudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner.").  The ALJ's perfunctory reasoning did not constitute careful consideration or good reasons for giving Dr. Coraisso's opinion little weight.

---

[8] The Commissioner also cited *Lawson v. Comm'r of Soc. Sec.*, No. 14-CV-11508, 2015 WL 3966843, at *10 (E.D. Mich. June 30, 2015), but again, this opinion did not address a treating physician's assessment of the plaintiff's RFC.

With respect to the ALJ's reasoning that the diagnostic evidence did not support Dr. Coraisso's opinion, it is well established that an ALJ may not "substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Meece v. Barnhart*, 192 Fed. Appx. 456, 465 (6th Cir. 2006). "While an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his own lay 'medical' opinion for that of a treating or examining doctor." *Smiley v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 592, 600 (S.D. Ohio 2013) (citation, internal quotation marks and brackets omitted).  An ALJ may consider the insufficiency of medical data relied upon to support a treating physician's opinion. *Smith v. Astrue*, No. 07-420, 2008 WL 5429685, *5 (S.D. Ohio 2008) (ALJ did not err in rejecting opinion of doctor who relied upon only subjective complaints and cited not objective clinical findings and observations).  But when, as here, the treating physician relied upon objective medical evidence to render an opinion, the "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings," *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (citation and internal quotation marks omitted). In short, an ALJ cannot rely upon his own medical expertise to draw conclusions from

13

raw medical data.  *Allen v. Comm'r of Soc. Sec.,* No. 12–15097, 2013 WL
5676254 at *15 (E.D. Mich. Sept. 13, 2013) *adopted by* 2013 WL 5676251
(E.D. Mich. Oct. 18, 2013) (collecting cases).

This is the precise error that the ALJ committed in giving little weight
to Dr. Coraisso's opinion; he substituted his medical judgment for that of
Dr. Coraisso's to interpret raw diagnostic testing.

## C.

The Commissioner cites *Nelson v. Comm'r of Social Security*, 195 F.
App'x 462, 472 (6th Cir. 2006), as allowing an ALJ to indirectly attack the
consistency and supportability of a treating physician's opinion's with the
record.  The Commissioner then cites to portions of the record to which the
ALJ referred, and states "the ALJ's description of the evidence is accurate
and supported by substantial evidence."  [ECF No. 15, PageID 945].  In
making this argument, the Commissioner heavily relies upon portions of
notes from Siva Sripada, D.O., who treated Dunavan for pain.  [ECF No. 6-
8, Tr. 647-50, 718-28].  It is true, as the Commissioner asserts, that Dr.
Sripada described Dunavan's MRIs are revealing only mild degenerative
changes, and stated in February 2014 that "[t]here is almost nothing in his
MRI that suggests the severity of his symptoms."  [*Id.*, Tr. 720, 728].  But
Dr. Sripada also stated that Dunavan had "left-sided cervical radiculopathy

14

associated with multilevel cervical neural foraminal narrowing," and treated him for his pain with Norco, Lyrica and steroid injections.  [*Id.*, Tr. 647, 649, 716, 722, 726].  Dr. Sripada consistently described Dunavan as being in pain, documented him wearing a hard collar, and stated in April 2014, "Although he is not a surgical candidate, he has persistent numbness and pain and weakness into the left extremity . . . ." [*Id.*, Tr. 647-50, 718-28]. Dr. Sripada did not render an opinion regarding Dunavan's functional capacity, and given his indication that Dunavan had persistent numbness, pain and weakness, the Court will not speculate that Dr. Sripada would have found differently than Dr. Coraisso.

Of further note, James C. Culver, M.D., the other physician Dr. Coraisso referred Dunavan to for pain treatment, concurred that the diagnostic studies revealed bilateral neuroforaminal stenosis at multiple levels.  [ECF No. 6-7, Tr. 234].  The diagnostic radiologists who interpreted the MRIs also repeatedly noted moderate, moderately severe or severe neural foramen narrowing at levels C3 to C7.  [*Id.*, Tr. 242-43, 244-45, 472-73].  These opinions are fully consistent with Dr. Coriasso's testimony that Dunavan had, at multiple levels, "moderate to severe narrowing bilaterally of the neural foramina." [ECF No. 6-8, Tr. 814].

15

The Commissioner also argues that Dr. Coriasso "frequently" noted that Dunavan had full, painless ranges of motion in his neck at appointments.  [ECF No. 15, PageID 945, citing 288, 296, 317, 325, 327, 348, 359, 370].  This representation of the record is misleading, as described below, but the Court first notes that the only record the ALJ cited as indicating that Dr. Coriasso found Dunavan to have a full, painless range of motion was from May 2014; the Commissioner has thus augmented the ALJ's reasoning.  [ECF No. 6-2, Tr. 24, citing ECF No. 6-8, Tr. 737].  And while the Commissioner cites a record from June 2012 as an example of when Dunavan showed no symptoms, that record actually states that Dunavan's cervical spine was tender, and that flexion and extension were limited and painful on that date.  [ECF No. 6-7, Tr. 327].  The Commissioner's citation to the record is also misleading because the January 2011, August 2011 and January 2012 records it cites relate to appointments that were before the April 2012 work injury and well before the March 2013 alleged onset date of the disability. [*Id.*, Tr. 348, 359, 370].

At more recent appointments, Dr. Coraisso reported that Dunavan's cervical spine was tender and that flexion, extension and rotation were all restricted and painful.  [ECF No. 6-7, 277-78, 274, 279-80, 315, 324; ECF No. 6-8, Tr. 651].  In fact, at the January 2015 appointment, which was

16

shortly before both Dr. Coraisso's deposition and the hearing held by the ALJ, Dr. Coraisso reported that Dunavan was doing poorly, that his neck pain and stiffness had worsened, that his headache had worsened, and that his upper extremity pain had worsened.  [ECF No. 6-8, Tr. 651].  The musculoskeletal examination revealed that Dunavan's cervical spine was tender, that he had bilateral muscle spasms, and that his flexion, extension and rotation were all restricted and painful.  [*Id.*].  Dr. Coriasso also reported in October 2014 that Dunavan exhibited shoulder pain and decreased ranges of motion, and numbness in the arm.  [ECF No. 6-8, Tr. 654].

Dr. Coraisso was not the only doctor to find that Dunavan had decreased ranges of motion and significant pain in his cervical spine.  Lisa Goyot, M.D. examined Dunavan in May 2013 for an emergency room consultation, and found that his neck was somewhat tender, that he had decreased ranges of motion in his cervical spine in all motions, and that his Spurling sign[9] was positive.  [ECF No. 6-7, Tr. 252-53].  Similarly, at Dunavan's July 2013 appointment with Dr. Culver, the ranges of motion of his cervical spine were "extremely limited to extension and rotational

---

[9] The Spurling's test is also known as the foraminal compression test, and a positive test indicates pressure on the nerve root.
http://www.pthaven.com/page/show/161709-spurling-s-test

movements.  Flexion is at least moderately reduced, but is the least painful of the maneuvers." [*Id.,* Tr. 235].[10]  Dr. Culver continued, "On the left side grip, flexion, and extension all seem to result in severe pain," and "[t]here is exquisite tenderness with palpation throughout the mid and lower cervical spinal midline [and] the upper thoracic spinal midline."  [*Id.*].  He further described exquisite tenderness of Dunavan's musculature and of the occipital region of the head bilaterally, and sensory deficits in the left forearm.  [*Id.*].

These doctors used "acceptable clinical diagnostic techniques" to identify anatomical abnormalities – which is objective medical evidence under the regulations. 20 C.F.R. §§ 1512(b)(i) &1528(b).  In fact, Listing 1.00(C)(1) states that the diagnoses of musculoskeletal diseases require evaluation of, among other evidence, limitations of the ranges of motion of the joints, muscle weakness and sensory changes.  But here, the ALJ cited only two of the reports that described Dunavan's limited ranges of motion: the May 2013 report by Dr. Goyut and the October 2014 report by Dr. Coriasso regarding the decreased range of motion in Dunavan's shoulder, and nothing about the findings of muscle weakness or sensory loss and

---

[10] Dr. Culver declined to offer an opinion regarding Dunavan's functional capacity, stating that "such decisions below in the hands of the patient's primary care physician . . . ." [ECF No. 6-7, Tr. 232].

numbness of the arm.  [ECF No. 6-2, Tr. 22, 25].  When the ALJ stated that "the medical evidence of record does not contain objective signs and findings that can account for his subjective complaints of pain," he disregarded those clinical findings and cited only to MRIs, CT scans and an EMG from November 2011.  [*Id.*, Tr. 25-26, citing ECF No. 6-7, Tr. 481].  The ALJ placed relevance on the finding from the November 2011 EMG that there was no evidence of cervical radiculopathy, disregarding the multiple diagnoses of radiculopathy and moderate to severe foraminal stenosis described above that were within the relevant period.  [ECF No. 26].  Notably, according to Listing 1.00(B)(1), loss of function may be due to disorders of the spine with radiculopathy or other neurological deficits, so the ALJ should have considered the evidence of that diagnosis.

Moreover, the ALJ did not provide good reasons or any reasons at all for ignoring Dr. Coraisso's opinion that Dunavan could not work a full day or week.  This too was error.  *Lanham v. Comm'r of Soc. Sec.*, No. 1:15-CV-50, 2015 WL 9304552, at *7 (S.D. Ohio Dec. 21, 2015), *report and recommendation adopted*, No. 1:15CV050, 2016 WL 223585 (S.D. Ohio Jan. 19, 2016) (applying treating physician rule to opinion that claimant would be off task 25% of the workday and miss four days of work a month);

*Sabourin v. Comm'r of Soc. Sec.*, No. 12-12784, 2013 WL 2480689, at *6
(E.D. Mich. June 10, 2013) (applying treating physician rule to opinion that
claimant would require unscheduled breaks and miss four or more
workdays a month).

So the Court cannot agree with the Commissioner that the ALJ's
decision engaged in an indirect attack on Dr. Coraisso's opinion that was
supported by substantial evidence; the ALJ's conclusions ignored relevant
clinical findings from multiple examiners; ignored the diagnoses of
radiculopathy and foraminal stenosis within the relevant period; and
ignored Dr. Coraisso's testimony that Dunavan would be off task during the
work periods.  Substantial evidence cannot be based upon fragments of the
evidence, and "must take into account whatever in the record fairly detracts
from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)
(internal quotation marks and citation omitted).

**D.**

The Commissioner argues that the ALJ's assessment of Dunavan's
RFC is supported the opinion of a State agency consultant, and that the
opinion of that consultant is further grounds for giving little weight to Dr.
Coriasso's opinion. This argument disregards the general rule that treating
physician's opinions are given more weight than those from consultants.

20

> Generally, we give more weight to opinions from your treating
> sources, since these sources are likely to be the medical
> professionals most able to provide a detailed, longitudinal
> picture of your medical impairment(s) and may bring a unique
> perspective to the medical evidence that cannot be obtained
> from the objective medical findings alone or from reports of
> individual examinations, such as consultative examinations or
> brief hospitalizations.

20 C.F .R. § 404.1527(d)(2). *See also Johnson v. Comm'r of Soc. Sec.*,

652 F.3d 646, 651 (6th Cir. 2011).

The Commissioner also states, "[T]he ALJ noted Plaintiff's statements

concerning his activities of daily living were overshadowed by other

accounts of his abilities—including that after his alleged onset date he

could shovel to dig roots." [ECF No. 15, PageID 950, citing ECF No. 6-2,

Tr. 26]. In truth, although the ALJ stated that Dunavan's ADLs were in

excess of his stated abilities, the *only* proof the ALJ cited was the August

2013 complaint of pain after digging up roots. [ECF No. 6-2, Tr. 26]. This

one-time incident does not describe daily activities. At the hearing,

Dunavan testified his migraines occur about two to three times a week and

usually last all day, and that he must "lay down in a dark room" because his

"head just feels like its exploding." [*Id.*, Tr. 39-40]. His medications also

make him dizzy and drowsy, causing him to nap two or three times a day.

[*Id.*, Tr. 43]. Dunavan reported that his wife handles the household

responsibilities, like cooking, cleaning, and cutting the grass because he is

21

unable to do them, and that his wife has to help him shower.  [*Id.*, Tr. 41, 44].  He said that he is unable to drive, shop, visit friends, or go to church and spends his days watching TV or reading while in his recliner.  [*Id.*, Tr. 42].  The Commissioner cited this testimony earlier in his decision, [*Id.*, Tr. 19-21], but did not addressing it when concluding that Dunavan's ADLs were in excess of his stated abilities.  [*Id.*, Tr. 26].  Thus, while the Commissioner is correct that the ALJ was permitted to consider Dunavan's ADLs, *see* 20 C.F.R. § 1529(c)(3)(v), it does not appear that the ALJ considered them at all.

The Commissioner further argues that the ALJ was entitled to consider Dunavan's conservative treatment, his lack of compliance with physical therapy and home exercises, and his refusal to receive epidural injections.  While these considerations are ordinarily relevant, they do not override the opinion of a treating physician that is supported by objective medical evidence, including abnormal findings from MRIs and clinical examinations.  *See Berryhill v. Colvin*, No. CV 15-14029, 2017 WL 362669, at *5 (E.D. Mich. Jan. 6, 2017) (nature of the treatment, alone, does not constitute good cause for limiting the weight given to a treating physician).  And while the Commissioner describes Dunavan's treatment as conservative, he *was* taking strong narcotics that caused constipation and

22

withdrawal symptoms.  [ECF No. 6-8, Tr. 816-17, 819-20].  The use of

strong narcotics is generally considered evidence to support the claimant's

credibility.  *Hill v. Astrue*, No. 3:08CV00190, 2009 WL 3110365, at *13

(S.D. Ohio July 17, 2009), *report and recommendation adopted in relevant

part*, 2009 WL 3110364 (S.D. Ohio Sept. 23, 2009) (treatment with

Oxycontin and Vicodin supported plaintiff's credibility); *Brewer v. Astrue*,

No. 5:09-CV-3023, 2011 WL 1304889, at *4 (N.D. Ohio Apr. 1, 2011)

(plaintiff's use of prescribed "strong narcotic pain medication" along with

epidural injections supported her credibility).  There is no rule that a

recommendation for surgery is necessary in order for pain to be considered

disabling.

   At bottom, neither Dr. Coriasso's opinion nor the multiple findings that

Dunavan suffered reduced ranges of motions, and pain with such motions,

support the ALJ's assessment of his RFC.

## III.   CONCLUSION

   For the reasons stated above, the Court **RECOMMENDS** that the

Dunavan's motion be [ECF No. 10] be **GRANTED**; that the Commissioner's

motion [ECF No. 15] be **DENIED**; and that this matter be **REMANDED** for

further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD

Dated: February 14, 2017                 United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains.  Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to

the objections, specifically addressing each issue raised in the objections in

the same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 14, 2017.

<u>s/Marlena Williams</u>
MARLENA WILLIAMS
Case Manager